IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRIAN COPELAND,            )
                              )
        Plaintiff,          )   Case No. 4:09-CV-00310
                              )
        vs.                )
                              )
KRAMER & FRANK, P.C.,   )
                              )
        Defendant.     )

## DEFENDANT'S MEMORANDUM IN SUPPORT OF THE MOTION FOR NEW TRIAL

COMES NOW Defendant Kramer & Frank, P.C. and for its Memorandum in Support of its Motion for a New Trial, made pursuant to Federal Rule of Civil Procedure 59, states as follows:

### I.     INTRODUCTION

The trial of this matter began on July 19, 2010. At the close of Plaintiff's evidence, Kramer & Frank submitted a Motion for Directed Verdict which the Court denied. (Doc. 85). On July 20, 2010, at the close of evidence, Defendant made a motion for a directed verdict in favor of Kramer & Frank. The Court denied said motion. (Doc. 87). The case was submitted to the jury on July 20, 2010. The jury returned a verdict in favor of Plaintiff and against Defendant in the amount of one-thousand dollars ($1,000.00). The Court entered judgment accordingly on July 20, 2010.

Defendant Kramer & Frank is entitled to a new trial because: (1) Juror Number 2 failed to honestly answer material questions during voir dire which would have resulted in her being challenged for cause and which affected Defendant's ability to receive a fair trial; (2) the verdict director failed to properly instruct the jury to make specific findings of fact which supported the

finding of a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e(10); (3) the jury was not instructed as to the definition of "false, misleading and deceptive"; (4) the Court committed prejudicial error by failing to admit evidence of the abandonment of Plaintiff's claim for actual damages; (5) the Court committed prejudicial error because it failed to admit evidence that the Plaintiff did not attempt to set aside the underlying judgment pursuant to the Missouri Rules of Civil Procedure; (6) the Court committed prejudicial error because it failed to admit evidence that the Plaintiff was seeking to recover attorney's fees; and, (7) the verdict was against the weight of the evidence.

Defendant files contemporaneously its Motion for Judgment Notwithstanding Verdict and accompanying Memorandum in Support and incorporates such in their entirety by reference herein.

## II.       STANDARD OF REVIEW

Under Rule 59(a) of the Federal Rules of Civil Procedure, the Court may grant a motion for a new trial "on all or some of the issues." Fed.R.Civ.P. 59(a)(1). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence ... or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell,* 86 F.3d 1472, 1480 (8th Cir.1996). "The authority to grant a new trial is within the discretion of the district court." *Id.* "The key question is whether a new trial should [be] granted to avoid a miscarriage of justice." *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1400 (8th Cir.1994). A new trial is appropriate when the trial, through a verdict against the weight of the evidence or legal errors at trial, resulted in a miscarriage of justice. *White v. Pence,* 961 F.2d 776, 780 (8th Cir.1992). A new trial is warranted where the district court clearly abused its discretion. *Zutz v. Case Corp.,* 422 F.3d

764, 772 (8th Cir. 2005).  As set forth below, a new trial is warranted in the current matter to prevent the miscarriage of justice.

## III.   ANALYSIS

### A.   Defendant is entitled to a new trial due to juror misconduct.

On August 11, 2010, Kramer & Frank filed a Motion for Leave to Contact Juror, or in the alternative, for the Court to Conduct Investigation of Juror Misconduct (Doc. 102).[1]  During voir dire, the Court and counsel for Defendant asked the potential jurors multiple questions related to their debt history.  Although the transcript of voir dire is not available at this time,[2]  Defendant's notes indicate the following questions were asked of the jury:

1.   Had a judgment entered against them?
2.   Been a plaintiff or a defendant in a lawsuit?
3.   Had a lawsuit filed against them to collect a debt?
4.   Had any collection activities brought against them related to a debt or judgment?
5.   Whether any close family members had had their wages garnished or a judgment taken against them?

Juror No. 2 did not answer in the affirmative to any of the above questions, nor did she attempt to amend her silence when counsel for Defendant gave the jurors an opportunity to correct any answers they may have remembered as voir dire progressed.  It appears from Defendant's notes that Juror No. 2 only spoke to the Court once, in relation to her employment, and never volunteered any further information.  If the evidence set forth in Doc. 102 is related to Juror No. 2 and is verified through an evidentiary hearing or by deposition, Kramer & Frank is entitled to a new trial due to juror misconduct.

---

[1] Defendant's Motion for Leave to Contact Juror, or in the alternative, for the Court to Conduct Investigation of Juror Misconduct (Doc. 102) is fully incorporated by reference herein.

[2] On August 4, 2010, Defendant filed an expedited request for the entire trial transcript, including voir dire. According to the Court's website, an expedited transcript would be provided within seven (7) days.  Upon information and belief, no such transcript will be provided until late August as counsel has been informed that the Court's reporter, Ms. Hopwood, is recovering from surgery.

In *McDonough Power Equipment v. Greenwood*, 464 U.S. 548 (1984), the Court explained the standard for determining whether a false or incorrect answer to a question in voir dire entitled a party to a new trial:

> We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*Id.* at 556; *see also U.S. v. Tucker*, 137 F.3d 1016, 1026 (8th Cir. 1998)(party seeking new trial for concealed juror bias must prove juror was dishonest and motivated by partiality, and true facts would have supported striking juror for cause).  Thus, in order to sustain a motion for new trial, Kramer & Frank must demonstrate that Juror No. 2 failed to honestly answer material questions on voir dire, that such answers would have affected the juror's ability to be impartial and fair, and that had the juror answered honestly, those facts would have supported a valid challenge for cause.

As set forth in Doc .102, Kramer & Frank has made a colorable claim entitling it to an evidentiary hearing related to its allegations of juror misconduct.  *See U.S. v. Camacho*, 555 F.3d 695, 704-05 (8th. Cir. 2009)(holding that a colorable claim of impropriety requires an evidentiary hearing over allegations of juror misconduct); *Pope v. Man-Data, Inc.*, 209 F.3d 1161, 1163-64 (9th Cir. 2000)(holding "A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances and reversing the granting of a new trial absent specific findings that the juror's voir dire's responses were dishonest).

If the allegations set forth in Doc.102 are substantiated by the testimony of Juror No. 2, there is little question that Juror No. 2 failed to honestly answer material inquiries during voir

dire.  As it appears, Juror No. 2 failed to answer honestly that she had been a party to more than one lawsuit, had a judgment taken against her, had experienced post-collection attempts to collect the judgment which resulted in her driver's license being suspended, and that her husband had a default judgment taken against him and his wages garnished. As set forth in *McDonough Power Equipment,* if Juror No. 2 had indeed experienced the collection activities outlined by Defendant, her motives for concealing such experiences more likely than not affected her impartiality and affected Kramer & Frank's ability to receive a fair trial.

In *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998), the court held that a juror's lies during voir dire warranted an inference of bias.  The court noted the important function of voir dire —to enable the parties to "probe potential jurors for prejudice" —and that for voir dire to function, <u>jurors must answer questions truthfully</u>.  The *Dyer* court further stated:

> **The individual who lies in order to improve his chances of serving has too much of a stake in the matter to be considered indifferent. Whether the desire to serve is motivated by an overactive sense of civic duty, by a desire to avenge past wrongs, by the hope of writing a memoir or by some other unknown motive, this excess of zeal introduces the kind of unpredictable factor into the jury room that the doctrine of implied bias is meant to keep out.**

*Id.* (emphasis added).  Thus, under *Dyer*, if Juror No. 2's identity is confirmed, there is little question that the juror's failure to honestly answer material questions, regardless of the motivation, affected her ability to be impartial and fair to Kramer & Frank.

The case of *Jackson v. State of Alabama State Tenure Com'n*,  405 F.3d 1276, 1288-89 (11th Cir. 2005), is also instructive.  In *Jackson*, the Eleventh Circuit upheld the trial court's granting of a new trial in a discrimination action based on a juror's intentional and dishonest response to an indisputably material question during voir dire.  The juror in *Jackson* failed to disclose during voir dire a prior felony conviction despite direct questioning.  The court held it was undisputed that a question about prior felony convictions is material to jury service and that

an honest answer from this juror would have provided a basis to challenge her for cause. *Id.*  The district court's finding that the juror's failure to speak up was an intentional and dishonest response to an indisputably material question satisfied the *McDonough Power Equipment* test due to the nature of the conviction, specifically because the juror had been convicted in 1986 for murdering her child and sentenced to fifteen years in an Alabama prison. The juror served three years in prison and five years on probation. The Eleventh Circuit held that the juror "could not have forgotten that" when the court asked about convictions for crimes punishable by imprisonment for more than one year. The Eleventh Circuit reasoned "[h]aving spent three years in prison for murder, there is no reasonable possibility that this juror could have honestly doubted that she was covered by the question."  Thus, the *Jackson* court held the district court did not abuse its discretion in granting the Board's motion for a new trial.

Similarly, if Juror No. 2 has indeed been living with a default judgment on her credit for almost 10 years and her driver's license has been suspended as a result, there is no reasonable possibility Juror No. 2 could have honestly doubted she was covered by the questions.

Here, the jurors' verdict finding liability under the FDCPA had to be unanimous.  If Juror No.2 would have answered material voir dire questions honestly, she would have been challenged for cause based on her and her husband's judgment and collection history.  Defendant challenged two venire persons for cause based on their experiences with debt collectors.  Based on Defendant's challenge, this Court struck a potential juror, Ms. Williams, who had her car repossessed, had been sued and garnished by Ford Motor Credit, because of her potential bias stemming from such collection activities.  Thus, Defendant would have had challenged Juror No. 2 for cause and expect the Court would have granted it. .

Defendant is therefore entitled to a new trial as it appears Juror No.2 failed to honestly

disclose her and her husband's collection and judgment history during voir dire which affected her ability to be impartial.   And, if Juror No. 2 had answered voir dire inquiries honestly, Defendant would have challenged her for cause.   As it appears an impartial jury was not seated as a result of Juror No. 2's omission, Defendant is entitled to a new trial to avoid the miscarriage of justice.

**B.      Defendant is entitled to a new trial due to instructional error.**

**1.      The Court erred in giving and reading jury Instruction No. 5, the verdict director, instead of Defendant's proffered verdict director, because it failed to properly direct the jury to make specific findings of fact.**

The Court committed reversible error in giving and reading to the jury Instruction No. 5, the verdict director, rather than Defendant's proffered and rejected verdict director (Doc 93, Instruction No. 5; Doc. 92, at 2).[3]   A new trial can be granted if there is instructional error that prejudices a party.   *McKay v. WilTel Communication Sys., Inc.,* 87 F.3d 970, 975 (8th Cir.1996); *Huffman v. New Prime, Inc*., 2003 WL 24009006, 4 (W.D.Mo. 2003).

Here, the Court failed to adequately instruct the jury as to what Kramer & Frank conduct violated the FDCPA, specifically 15 U.S.C. 1692(e)(10).   Specifically, the Court erred in giving and reading jury Instruction No. 5, the verdict director, because it failed to properly direct the jury to make specific findings of fact which support the underlying elements required to prove an FDCPA violation. Instruction No 5. stated:

> Brian Copeland claims that Kramer & Frank violated the Fair Debt Collection Practices Act.  To prevail on this claim, Copeland must prove by the greater weight of the evidence that Kramer & Frank used false representations or deceptive means to collect a debt from Copeland.
>
> If you find that Kramer & Frank used false representations or deceptive means to collect a debt for Copeland, you must answer "yes" to Question No. 1.  If you find that Kramer & Frank did not use false representations or deceptive means to collect a debt from

---

[3]  Defendant objected on the record to the Instruction No. 5.  Despite its best efforts to obtain a transcript, Defendant has been unable.  Defendant will supplement its Motion for New Trial upon receipt of the transcript.

Copeland, then you must answer "no" to Question No. 1 of the Verdict Form.

(Doc. 93, Instruction 5).

There are no Model Instructions for an FDCPA case.  There are, however, other federal statutes for which the Circuits have drafted model instructions and provided trial courts with guidance as to how to instruct a jury.  Such Model Instructions and their Comments on Federal Statutes provide the Court with guidance for instructing a jury on the violation of a federal statute.  For example, in the context of an Americans with Disability Act (ADA) case, the Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit Instruction No. 55.2A (2001), states:

> As drafted, the Model Instructions do not use the term "disability" and, thus, do not require the jury to determine whether a plaintiff has a "disability." **Rather, the instructions require the jury to find the facts which support the underlying elements of a disability under the Act.**

(emphasis added).  Here, as with an ADA claim, the Court should have given an instruction which specifically defined the conduct which allegedly violated the FDCPA rather than allow the jury to pick and choose any facts it felt violated the FDCPA.

The Court further erred by refusing Defendant's proffered verdict director, which specifically identified the disputed conduct as delineated by the Court in Doc. 54:

### INSTRUCTION NO.

> Your verdict must be for Brian Copeland on his claim for violation of the Fair Debt Collection Practices Act if you believe,
>
> First, Kramer & Frank, P.C. amended the document to indicate that plaintiff had appeared and consented to a judgment being entered against him, and
>
> Second, Kramer & Frank, P.C. in so doing used false representations or deceptive means to collect or attempt to collect a debt which would mislead the unsophisticated consumer, and
>
> Unless you believe Brian Copeland is not entitled to recovery by reason of Instruction

_____.

(Doc. 92 at 2).

The Court's failure to give such an instruction which identified specific facts, therefore, constitutes a "roving commission" which misled the jury and warrants the granting of a new trial. "A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury 'to roam freely through the evidence and choose any facts which suited its fancy or its perception of logic' to impose liability." *Cincinnati Ins. Co. v. Bluewood, Inc.* 560 F.3d 798, 806 (8th Cir. 2009)(quoting *Davis v. Jefferson Sav. & Loan Ass'n*, 820 S.W.2d 549, 556 (Mo.Ct.App.1991))(defining roving commission)).

Here, the jury was not instructed as to the facts that could, if found, lead to a finding that Defendant was liable under the FDCPA. Instruction No. 5 allowed the jury to impose liability for any and all of Ms. Milliot and Kramer & Frank's conduct or statements it found false or misleading. This "roving commission" allowed the jury to place liability on Kramer & Frank for any conduct, even if the Court had prohibited the Plaintiff from arguing that such was an FDCPA violation.

The Court stated during trial that Plaintiff was not allowed to argue in closing that Kramer & Frank violated the FDCPA because Ms. Milliot failed to tell Plaintiff that he could be garnished if he did not comply with the terms of the consent judgment and payment plan. Therefore the Court's instruction, which allowed for any conduct by Kramer & Frank to constitute an FDCPA violation, was in error as the verdict director was prejudicial to Defendant and failed to fairly and adequately submit the case to the jury.

Here, the Court did nothing more than repeat the statutory language of 1692e(10) instead of delineating what conduct by Kramer & Frank was allegedly a false misrepresentation or

deceptive.  Such an instruction has warranted a new trial.  In *Structural Rubber Products Co. v. Park Rubber Co.,* 749 F.2d 707, 723 (Fed. Cir. 1984), the Court of Appeals reversed, vacated and remanded judgment in a patent case.  The court held that the trial court committed error as it "abdicated its responsibility to inform the jury of how the statute applies to the particular case." The court stated**,** "[t]o repeat statutory language is not sufficient unless its meaning and application to the facts are clear without explanation." *Id.* The court reasoned that a party has a right (upon proper requests) to have the trial court delineate in its instructions what facts in the particular case must be found to reach a conclusion of liability.

The duty of a trial court in any jury trial is to give instructions that are meaningful, not in terms of some abstract case, but which can be understood and given effect by the jury once it resolves the issues of fact which are in dispute. *Id.* (citations omitted).  The *Structural Rubber Products Co.* court held that such instructions are required so that, on appeal, the court

> will not be forced to engage in shadowboxing the presumptions and assumptions underlying the decision which is necessary when the trial court does no more than read or paraphrase the statute as an instruction. Without the benefit of the trial court's reasoning in particularized instructions, the appeal takes on the character of an initial determination with respect to application of the law to the facts, rather than a review.

*Id.*

Thus, as set forth in the *Structural Rubber Products Co.* case and reflected in the Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit Instruction, Defendant properly requested that the trial court delineate in its instructions what facts in the particular case must be found to reach a conclusion of liability.  The Court's denial of Defendant's request gave the jury a "roving commission" to find liability based on any fact it wanted in evidence, even those the Court had specifically found did not support a finding of

liability. Such an instruction was prejudicial to Defendant and misled the jury as to Defendant's rights and responsibilities under the FDCPA.  A new trial is therefore warranted.

**2.     The Court erred by failing to define "false representations or deceptive means" as offered by Defendant.**

Jury instructions must fairly and adequately submit the issues in the case to the jury. *Wilson v. City of Des Moines,* 442 F.3d 637, 644 (8th Cir. 2006).  A new trial should be granted when an instruction is based on key terms, requiring independent factual findings, which are not defined in the instruction itself or elsewhere in the instructions.  *Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp.,* 786 F.2d 817, 818 (8th Cir. 1986).  Here, the Court not only failed to set forth the specific facts which Plaintiff alleged were false misrepresentations or deceptive means but also failed to define "false representations or deceptive means," prejudicing Defendant.  "The test is whether the instructions given, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Gasper v. Wal-Mart Stores, Inc.,* 270 F.3d 1196, 1200 (8th Cir. 2001)).

The Court erred by failing to read and give Defendant's proffered instruction defining "false representations or deceptive means," as including a materiality requirement.  Defendant offered the following definition which was rejected by the Court:

> As used in Instruction No. X, "false representations or deceptive means" include statements or representations that are not true in a material respect, and that the debt collector knew were false or deceptive when they were made, or that the debt collector had reason to believe were false or deceptive when they were made.

(Doc. 92 at 1).[4]  The Eighth Circuit has advised trial courts that the better practice is for the court to explain terms to jurors when the possibility for confusion exists.  *Board of Water Works Trustees of City of Des Moines, Iowa v. Alvord, Burdick & Howson* 706 F.2d 820, 824 (8th Cir.

---

[4] This instruction was taken verbatim as given in *Rockwell v. Talbott, Adams & Moore, Inc.*, Case 8:04-cv-00024-LSG, Doc. 82 (D. Neb. 2005), another §1962e(10) FDCPA case in the Eighth Circuit.

1983).  Defendant was prejudiced by the Court's failure to instruct on the definition, specifically that the jury needed to find both that a statement was false or deceptive as well as material.

In *Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp.,* the Eighth Circuit reversed and remanded the entry of judgment based on the jury's verdict due to inadequate instructions.  *Federal Enterprises, Inc.,*786 F.2d at 818.  The Eighth Circuit held, similar to the case at hand, the court failed to define key terms such as "agent" and "appearance of authority" was reversible.  *Id* at 820.

A court must define "'enigmatic terms' that leave the jury to speculate on their meaning." *Miller v. Neathery*, 52 F.3d 634, 638 (7th Cir. 1995).  For example, in *Miller*, the Seventh Circuit held that instructions failed to sufficiently orient the jury to its responsibilities with respect to the standard of liability. The Seventh Circuit found that the court's failure to define or otherwise to explain the term "recklessly" fatal and ordered a new trial.  *Id.*

Failing to define "false representations or deceptive means" was prejudicial to Defendant in that there was no testimony at trial that any of Ms. Milliot's statements were not true in a material respect, were intentionally false or deceptive, or that Ms. Milliot knew her conduct was false or deceptive.  Where terms are not readily understood by the jury or where the possibility of confusion concerning a term exists, the court should define or explain such a term. *See Federal Enterprises, Inc. v. Evans,* 786 F.2d 817, 820 (8th Cir. 1986) (instruction deficient because "key terms, requiring independent factual finding," were not defined).

Such was the case in *Westborough Mall, Inc. v. City of Cape Girardeau, Mo*., 794 F.2d 330, 337-39 (8th Cir. 1986).  In *Westborough Mall,* the Eighth Circuit remanded and ordered the district court should incorporate a definition of "official policy" in its jury instructions on a §1983 claim.  Reasoning that the court has the "duty to give the substance of the requested

instruction where it appears that the instruction on the issue is [necessary] to enable the jury to determine intelligently the question," the Seventh Circuit held that "official policy" should be defined and granted the motion for new trial.

The key term sought to be defined by Defendant, "false representations or deceptive means," is not a term which comport with their ordinary meaning and therefore should have been defined by the Court, specifically as they relate to materiality.  The definition offered by Defendants—that any misrepresentation include statements or representations (1) not true in a material respect; (2) that the debt collector knew were false or deceptive when they were made; (3) or, that the debt collector had reason to believe were false or deceptive when they were made— are not universally understood by lay persons nor appreciated in all its legal ramifications.

The Sixth, Seventh and Ninth Circuits, as well as a number of District Courts, require that Plaintiffs show a statement is not only technically false, but also material, to support a claim for "false representations or deceptive means" under the FDCPA.  *See  Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596-97 (6th Cir. 2009)   *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009); *Donohue v. Quick Collection, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010); *O'Fay v. Sessoms & Rogers, P.A., Order*, No. 5:08-cv-615-D (E.D.N.C. Feb. 9 2010); *Albritton v. Sessoms & Rogers, P.A.*, WL 3063639, 6-7  (E.D.N.C. 2010); *Rice v. Great Seneca Financial Corp.*, 2010 WL 2541626, 4 (S.D.Ohio 2010).[5]  Here, the verdict directing instruction did not require the jury to find that Kramer and Frank had committed any conduct actually cognizable under the FDCPA before holding Kramer and Frank liable for violation of the statute.  The lack of a materiality instruction made this roving commission even worse.  Not only was the jury

---

[5] The FDCPA's materiality requirement is discussed more fully in Defendant's Memorandum in Support of Its Motion for a Judgment Notwithstanding the Verdict.

allowed to impose liability for even the most minimal and technical of unspecified violations, it was allowed to do so even if the "violation" would have made no difference to an unsophisticated consumer.

Here, this error was anything but harmless.  There is no dispute that any alteration of the judgment form was made to reflect what actually occurred – that Mr. Copeland was not in default, was present and signed the form; there is no dispute that Kramer & Frank honored the payment agreement it made with Mr. Copeland; there is no dispute that Mr. Copeland owed the debt that Kramer & Frank was collecting; and, there is no dispute that Mr. Copeland did not have, and did not intend to raise, any defense the lawsuit.  Simply stated, nothing that the jury may have found false or misleading would have made any difference.  Plaintiff has made no showing that had an unsophisticated consumer known the truth of any putative misstatement, he would have acted any differently.

Thus, in light of the Court's failure to instruct and define "false representations or deceptive means," Defendant is entitled to a new trial.  In the alternative, in light of the Court's failure to provide Defendant's proffered definition and verdict director identifying specific facts which constituted an FDCPA violation, a new trial is warranted as the Court failed to fairly and adequately submitted the issues in the case to the jury."

**C.      Defendant is entitled to a new trial due to evidentiary error.**

A district court has wide discretion in admitting and excluding evidence, and "its decision 'will not be disturbed unless there is a clear and prejudicial abuse of discretion.' " *United HealthCare Corp. v. Am. Trade Ins. Co.,* 88 F.3d 563, 573 (8th Cir. 1996) (quoting *Maddox v. Patterson,* 905 F.2d 1178, 1179 (8th Cir. 1990)).  A new trial may be granted or the jury verdict's judgment reversed for an abuse of discretion in admitting or excluding evidence if it

affects a substantial right of the party challenging the ruling. Fed.R.Evid. 103(a); Fed.R.Civ.P. 61. Further, if erroneous evidentiary rulings standing alone may be insufficient to justify reversal, a court may order a new trial if the cumulative effect is not harmless. Making this determination involves an "assessment of the likelihood that the error affected the outcome of the case." *Malek v. Federal Ins. Co*., 994 F.2d 49, 55 (2nd Cir. 1993) (citations omitted).

As set forth below, the Court erred in its evidentiary determinations which affected the rights of Kramer & Frank and likely affected the outcome of the case, particularly when viewed cumulatively. Therefore, a new trial is warranted.

> **1.      The trial court erred because it failed to admit evidence of the abandonment of Plaintiff's claim for actual damages.**

Plaintiff's Complaint, discovery responses and deposition testimony all indicated that Plaintiff was seeking actual damages for emotional distress. It was not until Plaintiff's pre-trial filings made on June 29, 2010, that Kramer & Frank became aware that Plaintiff had abandoned his claims for actual damages.

The motivation to file an FDCPA suit seeking actual damages and the subsequent abandonment of such claims is relevant and was admissible as an admission against interest. *First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998). In *First Bank*, the Eighth Circuit held that statements from a parties' abandoned state court pleadings were admissible evidence that could be binding admissions against interest against the party in the federal matter. *Id.*

Here, the Court's refusal to allow admission of evidence regarding Plaintiff's, *i.e.* Larry P. Smith and Associates, Ltd.'s, attorney's fees is especially glaring in light of the firm's apparent *modus operandi* in consumer cases. The Smith Firm routinely files such cases and alleges emotional distress damages which it cannot prove. *See*, *e.g.*, *Bagby v. Experian*

*Information Solutions, Inc.* 2006 WL 14580, * 4 (7th Cir. 2006)(Plaintiff's self-serving and conclusory emotional distress evidence of "stresses," tension headaches, and clashes with her fiancé did not meet the threshold of proof for emotional distress.); *Ruffin-Thompkins v. Experian Information Solutions, Inc.* 422 F.3d 603, 609-10 (7th Cir. 2005)(Plaintiff's evidence of emotional distress damages, consisting of only the Plaintiffs' conclusory statements, did not explain the circumstances with reasonable detail to allow a jury to decide whether such damages should be awarded.); *Sarver v. Experian Information Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)(Plaintiff cannot rely on conclusory statements to support claim for emotional distress damages); *Wantz v. Experian Information Solutions* 386 F.3d 829, 834-35 (7th Cir. 2004)("No reasonable jury could award" emotional distress damages because Plaintiff presented no evidence other than his own conclusory assertions.); *Crass v. Marval & Associates LLC*, 2010 WL 2104174, *1-2 (E.D.Wis. 2010)( "Plaintiff's conclusory allegations that she has "suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress" . . . are insufficient to establish her emotional distress with any certainty.")(citation omitted); *Suszka v. Capital Collections*, *LLC*, 2009 WL 959798, *2 (E.D.Wis. 2009)("Suszka's conclusory allegations of an emotional injury are insufficient to establish damages."); *McCelland v. Experian Information Solutions, Inc.* 2006 WL 2191973, *4 (N.D.Ill. 2006)(Plaintiff's claim for emotional distress damages failed because his evidence was only that he was "constantly talking about it," "thinking about applying for something and not knowing what this effect that is going to have on that application," "gaining weight. Let's blame it on that," and "lack of sleep.").

In each of these cases – and these are only the Smith firm's *reported* cases on the issue – the Smith Firm extensively litigated for only minimal, statutory damages. Its reason for doing so is readily apparent: it seeks to claim a huge fee even where Plaintiff has suffered no damages

whatsoever.  The Smith Firm knew, as courts have made clear to it many times that the Plaintiff in this case had no claim for actual, emotional distress damages.  The Court prejudicially undermined Defendants' ability to present Plaintiff's actually motive for pursuing this action – a hefty fee award for the Smith Firm – when it excluded evidence of *both* Plaintiff's abandonment of his claim for emotional distress days before trial *and* his counsel's use of that claim to drive up attorney's fees throughout the litigation of this nominal damages case.  Worse yet, it encouraged the Smith Firm to continue with the same strategy in the future.

Plaintiff's motives to bring such a claim were admissible and relevant.  It is relevant that Plaintiff has suffered no actual or compensatory damages in relation to the alleged FDCPA violation.  The Court's error in refusing to admit such evidence was prejudicial in that Defendant was unable to adduce evidence as to Plaintiff's motives. Plaintiff's failure to seek such relief is relevant to the issue of mitigation.  Additionally, his failure to seek relief from the judgment could lead the jury to the inference that the deceptive acts were not material to the decision Plaintiff made.  Thus, the Court erred in failing to submit such evidence warranting a new trial.

**2.     The trial court erred because it failed to admit evidence or otherwise argue to the jury that Plaintiff was seeking to recover attorney's fees.**

The Court held that Defendant could not present evidence or otherwise argue to the jury that Plaintiff is seeking to recover attorney's fees.  The court agreed with Plaintiff's position that the probative value of the introduction of such evidence was outweighed by its prejudicial effects.

In *Addison v. Braud, Jr.,* 34 F.Supp.2d 407, 410 (M.D. La. 1998), the trial court denied the Plaintiff's motion for new trial in an FDCPA case.  Plaintiffs argued that the trial court erred in allowing the defense counsel to argue that the possible award of attorney's fess rather than the

vindication of plaintiffs' consumer rights were the driving force for the lawsuit. Further, the court instructed the jury on attorney's fees.

The trial court stated: "if jurors do not know the legal effect of their verdict, they can hardly follow the judge's instructions. Thus, in this court's view, informed jurors perform better than uninformed or misinformed jurors." *Id.* at 409. The *Addison* court held that there was no error of law committed by informing the jury of the attorney's fee provision and that any prejudice to plaintiff was offset by other considerations, specifically the jury's finding that the noncompliance was unintentional and no punitive damages were awarded.

Further, the court noted that the attorney who brought suit for the Addison, Lawyer Ridge, entered his appearance and then allowed the defendant to take a default in the state court action and then filed the FDCPA action in federal court. The trial judge reasoned that the fact that there was an attorney's fees provision could explain why a lawsuit would be brought for a technical violation, i.e.— it was pursued as a means of generating attorney's fees. Further:

> [t]his information bore on the nature or importance of the noncompliance to plaintiffs and was relevant to the jury's determination of punitive damages. This court concludes that the record provides a factual basis for defendant's argument and that a reasonable jury could conclude that this action was filed more for the purpose of generating a fee for Lawyer Ridge than to vindicate any invasion of the consumer rights of the Addisons.

*Id. at* 411. Here, like the *Addison* case, a reasonable juror could have concluded that this action was filed for no more than attorney's fees. Thus, the Court erred in failing to submit such evidence warranting a new trial.

Further, the failure to instruct or allow Defendant to argue that the motive for the lawsuit was attorney's fees is particularly prejudicial in light of Plaintiff's last minute abandonment of his claim for actual damages and the trial court's failure to allow Defendant to argue that Plaintiff could have moved to have the underlying judgment set aside pursuant to the Missouri

Rules of Civil Procedure when he either received a copy of the document from the state court or received notice of the garnishment.  Thus, viewed cumulatively, the Court's evidentiary errors were not harmless and a new trial is warranted.

### 3. The trial court erred because it failed to admit evidence that the Plaintiff did not attempt to set aside the underlying judgment pursuant to the Missouri Rules of Civil Procedure.

The Court erred as it failed to admit evidence that Plaintiff did not attempt to set aside the underlying judgment pursuant to the Missouri Rules of Civil Procedure. Missouri law provides a remedy to Plaintiff if Plaintiff was somehow misled by Kramer & Frank during the underlying action.  Under Missouri Supreme Court Rule 74.06, *Relief from Judgment or Order:*

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic) misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular;…or (5)…it is no longer equitable that the judgment remain in force.

Mo.S.Ct.R. 74.06(b).  Under Missouri Supreme Court Rule 74.06 (c), Plaintiff had one year to make a motion pursuant to Rule 74.06(b):

> A motion under subdivision (b) does not affect the finality of a judgment or suspend its operation. The motion shall be made within a reasonable time and for reasons (1) and (2) and (3) of subdivision **(b) not more than one year after the judgment or order was entered**. The motion and a notice of a time and place for hearing on the motion shall be served upon the parties to the judgment pursuant to Rule 54.

Mo.S.Ct.R. 74.06(c).  Kramer & Frank was therefore prejudiced by the Court's failure to admit such evidence as such was relevant to Plaintiff's motives in bringing an FDCPA suit for a technical violation only.  Thus, the Court erred in failing to submit such evidence warranting a new trial when viewed alone or cumulatively.

**D.      Defendant is entitled to new trial as the verdict is against the weight of the evidence.**

Defendant is entitled to a new trial as the verdict assessing liability under the FDCPA and refusing to apply the bona fide error defense was against the weight of the evidence.  When considering whether to grant or deny a motion for new trial, a district court must consider whether the verdict is against the weight of the evidence and if allowing it to stand would result in a miscarriage of justice. *Adzick v. UNUM Life Ins. Co. of America*, 351 F.3d 883, 886 (8th Cir. 2003).

The jury verdict was against the weight of the evidence because Plaintiff failed to provide any competent evidence that: (1)the unsophisticated consumer would be misled by the communications at issue; (2) the modification of the judgment form was material and therefore actionable under the FDCPA; (3) he was deceived in light of his uncontroverted testimony that he simply misunderstood; and, (4) there was any fraudulent misrepresentation or deceptive means as a matter of law.  Defendant offered uncontroverted evidence that any violation was unintentional and the result of an objectively bona fide error despite reasonable procedures designed to prevent such an error, thus entitling Defendant judgment as a matter of law.

Defendant Kramer & Frank respectfully requests a new trial to prevent the miscarriage of justice as the jury's verdict was against the weight of the evidence.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Kramer & Frank respectfully requests the Court order a new trial in this action and grant such other and further relief as the Court deems just.

Respectfully submitted,

WUESTLING & JAMES, L.C.


 /s/   Susan M. Schwartzkopf
R.C. Wuestling                          #4861
Susan M. Schwartzkopf          #517873
720 Olive St., Suite 2020
St. Louis, MO  63101
Phone:  (314) 421-6500
Fax:  (314) 421-5556
Email:  wuestling@wuestlingandjames.com
E-mail:  schwartzkopf@wuestlingandjames.com

Attorneys for Defendants

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2010, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

David Marco [dmarco@smithlaw.us]
**Attorneys for Plaintiff**


 /s/ Susan M. Schwartzkopf