UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| BRIAN COPELAND, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:09CV310 CDP |
| KRAMER & FRANK, P.C., | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Following a two-day trial in this Fair Debt Collection Practices Act case, the seven person jury returned a verdict in favor of plaintiff Brian Copeland on July 20, 2010 in the amount of $1,000.00. Defendant now moves for a new trial on a variety of grounds and renews its motion for judgment as a matter of law.[1] The motions will be denied for the reasons that follow.

# Motion for New Trial

Following a jury trial resulting in an adverse judgment, a party may move for a new trial under Fed.R.Civ.P. 59(a)(1)(A). Under this Rule, "[a] new trial is appropriate when the first trial, through a verdict against the weight of the

---

[1] Defendant calls its motion a renewed motion for judgment notwithstanding the verdict, but these motions are now called motions for judgment as a matter of law. See Fed. R. Civ. P. 50.

evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error. Buchholz v. Rockwell International Corp., 120 F.3d 146, 148 (8th Cir. 1997). Errors in evidentiary rulings or in jury instructions are only prejudicial, and therefore only represent a miscarriage of justice that requires a new trial, where the error likely affected the jury's verdict. Diesel Machinery, Inc. v. B.R. Lee Industries, Inc., 418 F.3d 820, 833 (8th Cir. 2005) (evidentiary rulings); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 720 (8th Cir. 2008) (jury instructions).

**A.      Juror Misconduct**

In its first ground for relief, defendant contends that it is entitled to a new trial due to juror misconduct. Defendant conducted a post-trial investigation of the jurors in this matter and claims to have discovered that Juror Number 2 did not disclose that: 1) she had a judgment entered against her resulting from a car accident; 2) the judgment was subject to collection efforts; and, 3) her husband had a judgment entered against him and his wages were garnished to satisfy the

judgment.[2]

---

[2]The following questions were posed to the venire panel during voir dire:

> COURT: Now this case does involve, as I said, the Fair Debt Collection Practices Act, which is a federal law, and it involves — it involves collection of a debt, or attempted collection of a debt, so I need to know if anyone here — let me start with lawsuits, has anyone here ever been sued for collection of a debt? In other words, someone sued you because you owed them money or they said you did, and they took you to court? Anybody had that kind of a lawsuit?

(Trial Transcript I-69).

> COURT: I should broaden this. Let me start and not talk about debt collection cases, but I usually in all cases I ask about lawsuits, and I sort of narrowed it too soon today. First let's start by asking about any lawsuits, whether you yourself have ever brought a lawsuit or had someone sue you for any reason, whether it was a car wreck case or you slipped and fell in a store, or your next-door neighbor sued you over your fence, or something involving your jobs, anybody who has ever sued someone or been sued?

(TT I-70).

> COURT: Is there anyone else who has been sued on a debt, or is there anyone who has sued someone on a debt?

(TT I-70).

> COURT: Now I want to know about debt collection in general. The first question is whether any of you all ever had your wages garnished, maybe in a child support matter, or for any other reason, anyone had their wages garnished for child support or for any other reason?

(TT I-71).

> COURT: Is there anybody else who has ever had their wages garnished?

(TT I-73).

> COURT: So the other debt question I was going to ask you, I asked if your wages had been garnished and about lawsuits. Have any of you all ever been collected by a debt collection agency, someone has called you and asked about it?

"To obtain a new trial due to juror dishonesty during voir dire, 'a party must first demonstrate that a juror failed to answer honestly a material question on voir dire and then further show that a correct response would have provided a valid basis for a challenge for cause.'" United States v. Estey, 595 F.3d 836, 841 (8th Cir. 2010) (quoting McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984)).  "Under this standard, only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." Id. (internal quotation marks and citation omitted).   To obtain a new trial on this ground, then, defendant would have to prove three things: 1) that Juror Number 2 answered "dishonestly, not just inaccurately;" 2) that she was motivated by partiality; and 3) that the true facts, if known, would have supported striking her for cause.  See

---

(TT I-92).

> DEFENSE COUNSEL: Okay.  Does anyone think or believe — let me ask you this.  Has anybody ever had a judgment in a court case entered against them?  Now if you had your wages garnished, you would have had a judgment entered against you, so with that in mind?  Okay.

(TT I-113).

Juror Number 2 did not respond affirmatively to any of these questions.  Defendant argues that Juror Number 2 was a defendant in Case Number 2101 AC-13396, filed in 2001 in St. Louis County.  The state court file indicates that Juror Number 2 failed to appear as summoned on July 10, 2001.  A default judgment was accordingly entered against her in the amount of $860.82 plus $27.00 in court costs.  The judgment apparently remains unsatisfied.  Juror Number 2's Missouri driver's license was also apparently suspended for failure to pay the default judgment.

United States v. Tucker, 137 F.3d 1016, 1026 (8th Cir. 1998).

"The district court has broad discretion in handling allegations that jurors have not answered voir dire questions honestly . . . ." Id. "That discretion is not unlimited, however, and a movant who makes a sufficient showing of McDonough-type irregularities is entitled to the court's help in getting to the bottom of the matter." Id. After reviewing defendant's motion to contact Juror Number 2 (which I denied) and the pending motion, I decided that defendant had made a sufficient showing that it was entitled to a hearing about Juror Number 2's potential misconduct.

At the request of the Clerk of the Court, Juror Number 2 appeared for a hearing on October 7, 2010. Both parties submitted potential questions for me to ask Juror Number 2. I declined to ask most of the questions posed by defendant as argumentative and irrelevant to the limited issue before me. As I explained at the hearing, defendant was not entitled to ask the juror questions not actually posed on voir dire, including questions about an alleged garnishment action against her husband, as a basis for obtaining a new trial. See Tucker, 137 F.3d at 1029 ("Failure to ask the questions necessary to expose bias at voir dire can result in waiver of objections to a juror."). I also rejected defendant's argument that Juror No. 2 should be questioned about a possible bankruptcy filed in New York

because the evidence submitted in support of this assertion did not demonstrate that Juror No. 2 was living in New York during the relevant time period. Defendant subsequently withdrew this request.

At the hearing, I placed the juror under oath and we held the following exchange:

> COURT: Do you know whether — well, first of all, I've been provided some information that indicates that you were named as a defendant in a lawsuit in June of 2001 in St. Louis County as a result of a car wreck. Do you know anything about that?
>
> JUROR: No.
>
> COURT: Were you ever served with a lawsuit?
>
> JUROR: No.
>
> COURT: The plaintiffs are Gary and Sarah Gadeken?
>
> JUROR: No.
>
> COURT: Okay. So were you ever told that a judgment was entered against you?
>
> JUROR: No.
>
> COURT: Has anybody ever tried to collect a debt from you related to that?
>
> JUROR: No. Sorry, but I don't know.
>
> COURT: So you don't know anything about it?

JUROR: No.

I then excused the juror without further questioning because I found that she was truthful when she answered that she had no knowledge of a lawsuit and any resulting default judgment and that she had never been contacted by debt collectors. For these reasons, I denied the motion for new trial on this ground on the record.

As I explained, even if defendant's allegations about Juror Number 2 are true, she did not answer dishonestly. See Tucker, 137 F.3d at 1026. She did not conceal information. Instead, Juror Number 2 simply lacked knowledge of the alleged activities that, if known, would have provided a basis for responding affirmatively to some of the questions posed during voir dire.[3]

Nor can defendant demonstrate that Juror Number 2's failure to answer questions in voir dire was motivated by partiality. "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of the trial." Tucker, 137 F.3d at 1028 (quoting McDonough, 464 U.S. at 556). Here, Juror Number 2 did not speak up during voir

---

[3]My analysis does not change, even if I consider the information provided by defendant in its motion for reconsideration (information which was available prior to the hearing and should have been provided in support of its motion for new trial). I still believe Juror Number 2 was telling the truth, so the motion for reconsideration will be denied.

dire because she did not know anything that would have required her to do so. Under these circumstances, defendant cannot demonstrate that Juror Number 2 was motivated by the requisite partiality. Because defendant cannot meet the first part of the McDonough test, the motion for new trial based on alleged juror misconduct will be denied.

### B. Jury Instructions

Defendant next argues that instructional error warrants a new trial. "The district court is afforded broad discretion in choosing the form and substance of the jury instructions . . . ." Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 499 (8th Cir. 2010). "The instructions need be neither technically perfect nor a model of clarity." Id. Jury instructions must, when "taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Swipies v. Kofka, 419 F.3d 709, 716 (8th Cir. 2005) (internal quotation marks and citation omitted). "An erroneous instruction warrants a new trial only if the error misled the jury or had a probable effect on the verdict." Friedman, 606 F.3d at 499 (internal quotation marks and citation omitted).

Here, defendant complains of two instructional errors. First, defendant argues that the verdict directing instruction failed to properly instruct the jury to

make specific findings of fact. The verdict directing instruction, given to the jury over the defendant's objection, reads as follows:

INSTRUCTION NO. 5

> Brian Copeland claims that Kramer & Frank violated the Fair Debt Collection Practices Act. To prevail on this claim, Copeland must prove by the greater weight of the evidence that Kramer & Frank used false representations or deceptive means to collect a debt from Copeland.
>
> If you find that Kramer & Frank used false representations or deceptive means to collect a debt from Copeland, you must answer "yes" to Question No. 1. If you find that Kramer & Frank did not use false representations of deceptive means to collect a debt from Copeland, you must answer "no" to Question No. 1 of the Verdict Form.

Defendant contends that this instruction erroneously sanctioned a "roving commission" because it permitted the jury "to roam freely through the evidence and choose any facts which suited its fancy or perception of logic to impose liability." See Cincinnati Ins. Co. v. Bluewood, Inc., 560 F.3d 798, 806 (8th Cir. 2009) (internal quotation marks and citation omitted). Defendant claims that I should have specifically defined the conduct which allegedly violated the FDCPA. According to defendant, that conduct was limited to amending the judgment form after Copeland signed it to indicate that plaintiff consented to judgment being entered against him.

I reject this argument again for the same reasons that I refused defendant's proposed verdict director. Defendant's alleged violations of the FDCPA were not limited to one act, and the jury was entitled to consider all of the evidence, including the evidence of Copeland's interaction with Angelia Milliot, when deciding whether defendant used false representations or deceptive means to collect a debt in this case. The evidence was limited in time and scope. The instruction did not permit the jury to base its verdict on improper facts. I did not allow Copeland to argue that defendant's failure to advise him about the consequences of not satisfying a judgment amounted to a violation of the FDCPA. Because the verdict director, when viewed as a whole with the other instructions given in this case, properly stated the applicable law, defendant is not entitled to a new trial on this ground.

Defendant also alleges instructional error because I did not define "false representations or deceptive means" for the jury. At the start of trial, defendant offered the following instruction:

> As used in Instruction No. X, "false representations or deceptive means" include statements or representations that are not true in a material respect, and that the debt collector knew were false or deceptive when they were made, or that the debt collector has reason to believe were false or deceptive when they were made.

I refused this instruction as misstating the law because the Eighth Circuit does not

impose this requirement as an essential element of an FDCPA claim. There are no model instructions for cases arising under the FDCPA. The statute does not define these terms, and the Eighth Circuit has not done so, either. These terms have a common, ordinary meaning that could be readily understood by a jury and did not need to be defined through additional instructions. Because the instructions, when viewed as a whole, properly stated the applicable law, defendant is not entitled to a new trial on this ground.

### C. Evidentiary Rulings

"An allegedly erroneous evidentiary ruling does not warrant a new trial unless the evidence was so prejudicial that a new trial would likely produce a different result." Goss Intern. Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 434 F.3d 1081, 1098 (8th Cir. 2006) (internal quotation marks and citation omitted). Here, defendant argues that it is entitled to a new trial based on three allegedly erroneous evidentiary rulings: 1) I did not permit defendant to argue that Copeland had "abandoned" his claim for actual damages; 2) I excluded evidence that Copeland was seeking to recover statutory attorney's fees if he prevailed at trial; and 3) I excluded evidence that Copeland did not seek to set aside the underlying state court judgment. Because I continue to believe that my rulings are correct, I will deny the motion for new trial on these grounds for the

same reasons I excluded the evidence. As I explained during the pretrial conference, the mere fact that Copeland alleged actual damages but elected to pursue only an award of statutory damages at trial is not an admission against interest that is admissible at trial. First Bank of Marietta v. Hogge, 161 F.3d 506, 510 (8th Cir. 1998), simply does not apply to the case at bar.

Copeland's purported motivation for bringing this suit -- an award of statutory attorney's fees -- was irrelevant to the issues before the jury and unduly prejudicial to Copeland. As in any case where there is a fee-shifting statute, the issue of attorney's fees is for me, not a jury, to decide. Defendant only sought to introduce this improper evidence to inflame and prejudice the jury, and it was properly excluded.

Finally, the evidence that Copeland did not seek to set aside the underlying debt in state court was properly excluded as irrelevant to the issue of whether defendant violated the FDCPA. The validity or invalidity of the underlying debt was not an element of Copeland's case. Defendant only sought to introduce this improper evidence to inflame and prejudice the jury, and it was properly excluded.

### D. Weight of the Evidence

Finally, defendant argues that it is entitled to a new trial because the verdict was against the weight of the evidence. "The grant of a motion for a new trial is

appropriate only if the verdict is against the weight of the evidence and . . . allowing it to stand would result in a miscarriage of justice." Murphy v. Missouri Dept. of Corrections, 506 F.3d 1111, 1116 (8th Cir. 2007) (internal quotation marks and citation omitted). "Where reasonable minds can differ in evaluating the credible evidence, a new trial based on the weight of the evidence should not be granted." McRaven v. McMurrian, 2010 WL 582349, *1 (E.D. Ark. Feb. 11, 2010) (citing Jacobs Manufacturing Co. v. Sam Brown Co., 19 F.3d 1259, 1267 (8th Cir. 1994)). Here, there was ample evidence to support the jury's finding that defendant violated the FDCPA and that it could not prevail on its bona fide error defense. The evidence at trial established that Copeland went to state court after discussing a payment plan option with defendant over the phone, and once there, Milliot asked Copeland to step outside the courtroom to discuss his case. Milliot then presented Copeland with a document entitled Judgment, which showed the amount of the debt, while discussing a payment plan with Copeland. Copeland testified that the conversation centered around a payment plan and that Milliot told him if he agreed to the payment plan he should sign the document. After Copeland signed the document, Milliot then made misleading statements to Copeland about the state court docket to encourage him to leave the courthouse. After Copeland signed the document and left, Milliot altered the document

without Copeland's knowledge or consent to indicate that Copeland consented to judgment being entered against him. Defendant never mailed the altered document, or the final Judgment bearing the Judge's signature, to Copeland. Milliot also testified that she regularly dealt with all debtors the same way she dealt with Copeland, and defendant's training materials did not contain information specific to the issues presented in this case. This evidence supports the jury's findings, and no miscarriage of justice would result in allowing the verdict to stand.

For these reasons, the motion for new trial will be denied.

### **Renewed Motion for Judgment as a Matter of Law**

Defendant also renews it motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. I denied defendant's motions for directed verdict at the close of plaintiff's case and on the second day of trial at the close of all the evidence. Defendant now contends that plaintiff failed to make a submissible case under the FDCPA for the following reasons: plaintiff failed to present any evidence that the unsophisticated consumer would be misled by the communications; plaintiff failed to present any evidence that the modification of the judgment was false or material; and, plaintiff presented no evidence of fraudulent misrepresentations or deceptive means as a matter of law. Defendant

also argues that it is entitled to judgment as a matter of law on its bona fide error defense.

A motion for judgment as a matter of law should be granted only if the jury's verdict is utterly lacking in evidentiary support. In re Prempro Products Liability Litigation, 586 F.3d 547, 571 (8th Cir. 2009). When deciding a Rule 50 motion, I must construe the evidence most favorably to the prevailing party and draw all inferences in its favor, denying the motion "if reasonable persons could differ as to the conclusions to be drawn from the evidence." Western American, Inc. v. Aetna Casualty and Surety Co., 915 F.2d 1181, 1183 (8th Cir. 1990). I may not make credibility determinations or weigh the evidence. In re Prempro, 586 F.3d at 572 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). Under these standards, the motion must be denied.

In this case, plaintiff presented sufficient evidence during the two-day trial to allow a reasonable jury to conclude that defendant violated the FDCPA. The evidence, in its totality and after review, supports the jury's conclusion that defendant used false representations or deceptive means to collect a debt from Copeland and that it was not entitled to prevail on its bona fide error defense. The jury was presented with witness testimony and exhibits about the interaction between plaintiff and defendant, which it undoubtedly considered in detail during

its deliberations. It is not for this Court to simply set aside the jury's verdict because defendant argues a different conclusion should have been drawn from the evidence. Plaintiff's case was not as limited as defendant has repeatedly argued. The evidence presented at trial does not change this conclusion and does not serve as a basis for disturbing the jury's verdict. For these reasons, the renewed motion for judgment as a matter of law will be denied.[4]

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for new trial [#108] and motion for judgment notwithstanding the verdict [#110] are denied.

**IT IS FURTHER ORDERED** that the motion for leave to file the sealed motion for reconsideration [#145] is granted, but the motion for reconsideration

---

[4]Defendant admits that its pre-verdict motion failed to assert that it was entitled to judgment as a matter of law on its bona fide error defense. However, defendant argues that it was not required to do so since its other pre-trial filings, including its answer and motion for summary judgment, should have apprised the Court and plaintiff of its reasons for moving for judgment as a matter of law. The Eighth Circuit has "consistently held that the grounds for a renewed motion for judgment as a matter of law under Rule 50(b) are limited to those asserted in support of the pre-verdict motion for judgment as a matter of law under Rule 50(a)." Hyundai Motor Finance Co. v. McKay Motors I, LLC, 574 F.3d 637, 640-41 (8th Cir. 2009). "If a party fails to articulate with specificity the grounds for its pre-verdict motion for judgment as a matter of law, then judgment as a matter of law may neither be granted by the district court nor upheld on appeal unless such a result is required to prevent manifest injustice." Id. at 640 (internal quotation marks and citations omitted). "Although technical precision in stating the grounds for a motion for judgment as a matter of law is not necessary, the motion must be specific enough to notify the district court and the opposing party of the underlying issue." Id. at 642. Having reviewed the record, I doubt that defendant's pre-verdict motion met this standard with respect to its bona fide error defense. However, even if it did, I will still deny the motion for the reasons set out above.

[#146] is denied.

**IT IS FURTHER ORDERED** that the motion for leave to file a sealed reply in support of its motion for reconsideration [#148] is granted.

**IT IS FURTHER ORDERED** that plaintiff shall submit his supplemental fee petition within 14 days from the date of this Order. Defendant shall file its response 14 days after the supplemental petition is filed, and plaintiff shall file his reply brief in support of his request for attorney's fees 10 days thereafter.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of November, 2010.